(Supreme Court, Special Term, New York County.  November, 1901.)

REFEREE—COMPENSATION.

Under Code Civ. Proc. § 3296, providing that a referee shall be paid
$10 a day unless a different rate of compensation is fixed by consent of
the parties, the fact that the hearing was protracted and held at unusual
hours does not entitle the referee to more than $10 a day, in the absence
of stipulation.

In the matter of the assignment of Joseph Bieber and Jacob Green-
wald to William Liebermann for the benefit of creditors.  Motion
by assignee, whose alleged incompetency was the subject of the
reference, to set aside the report of the referee, and order confirming
the report, on the ground of misconduct of petitioner.  Modified.

See 59 N. Y. Supp. 118.

Ritch, Woodford, Bovee & Wallace, for the motion.
Weschler & Burstein, opposed.

CLARKE, J.  On the 11th day of July, 1898, the firm of L. Bie-
ber's Son & Co. made a general assignment for the benefit of credit-
ors to William Liebermann, an attorney at law.  In September, 1898,
a proceeding was instituted by one of the creditors for the removal
of the assignee because of alleged incompetence in the management
of the estate and misconduct.  Upon the hearing of that motion,
the court declined to pass upon the matter upon affidavits, as it in-
volved the conduct and character of an attorney, and sent the matter
to a referee, upon the condition that the petitioner should agree to
pay all the expenses of the stenographer and the referee, and all the
disbursements upon the reference, if he should fail in his attempt to
remove the assignee.  The taking of testimony began in September,
1898.  Because the matters involved the conduct of an attorney, and
all parties desired a speedy determination, and upon the request of
all parties the referee held exceptionally long sessions, in some in-
stances all day, in many all of the afternoon, and finally sitting up-
town, at the building of the association of the bar, in the evening,
from 8 o'clock p. m. until midnight.  The record comprises 3,314
typewritten pages, and the certificates of the referee disclose 98
sessions, and 60 days, or parts thereof, necessarily occupied in the
examination of the testimony and the law.  The report of the referee
was taken up by the petitioner, who paid the referee's fees of $2,200.
Exceptions were filed to the report, and the matter came on before
Mr. Justice O'Gorman, who confirmed the report, removed the as-
signee, and appointed a substituted assignee, ordered the removed
assignee to account, and further provided, in the order filed on Au-
gust 27, 1901, "It is further ordered that the petitioner, Abraham
Phillips, have judgment for the costs and disbursements, including
the referee's and stenographer's fees."  The removed assignee, whose
alleged incompetence and misconduct was the subject of the refer-
ence, now moves to set aside and vacate the report of the referee, and
all proceedings had thereunder, as well as the order confirming said

report, removing him, and appointing a substituted assignee, upon the ground of the misconduct of the petitioner in that proceeding in offering, and of the referee in receiving, fees in excess of the fees allowed by law, and for such other and further order as may be proper and just.

It appears that, at the commencement of the reference, without solicitation or suggestion on the part of the referee, the following was put upon the record:

"Mr. Hansom, Attorney for Petitioner: I would suggest that we stipulate that the referee and the stenographer should not be limited to the statutory fees, in view of the circumstances of this case; and, so far as the petitioner is concerned, we do so stipulate."

Counsel for the assignee did not join in that stipulation, apparently upon the ground that he had no right to bind the assigned estate. But he did join in the request for unusual and protracted hearings. I find that the amount paid to the referee was a reasonable amount for a most laborious and exacting service, and I find no reason to question the good faith and propriety of his conduct, in the light of all the unusual circumstances of this case, and I cannot set aside the order of Mr. Justice O'Gorman confirming the referee's report and removing the assignee. But inasmuch as section 3296 of the Code provides, "A referee * * * in a special proceeding * * * is entitled to ten dollars for each day spent in the business of the reference; unless at or before the commencement of the trial or hearing, a different rate of compensation is fixed, by the consent of the parties, other than those in default for failure to appear or plead, manifested by an entry in the minutes of the referee, or otherwise in writing," and there was no such stipulation in this case, and as the order of confirmation provides that the "petitioner have judgment for the costs and disbursements, including the referee's fees," I must modify that order, inasmuch as the assignee, although having taken advantage of the protracted hearings at unusual hours for his benefit, now makes this objection. Under the technical interpretation of that Code provision, the referee—there being no stipulation—was entitled to only $10 a day, whether 12 hours or half an hour in a calendar day was occupied in the "business of the reference." But it would be a travesty on justice to set aside the order removing the assignee for his misconduct and incompetence for the reason here alleged. Let an order be handed up modifying the order entered on August 27, 1901, by providing for judgment for the costs and disbursements, including the referee's fees at the rate of $10 a day for the number of days certified by the referee to have been spent in the business of the reference, and the stenographer's fees. No costs on this motion.

Ordered accordingly.